UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERAS CHARTERING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HYUPJIN SHIPPING CO., LTD,<br><br>Defendant. | Case No. 2:16-cv-0188-RSM<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTIONS FOR RELIEF FROM DISCOVERY DEADLINE AND SECURITY COSTS** |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Hyupjin Shipping Co., Ltd.'s ("Hyupjin") Motion for Summary Judgment. Dkt. # 22. Defendant seeks summary judgment on three issues: (1) whether it was entitled to a "reasonable time under the circumstances" for discharging its cargo at a particular port; (2) whether it is entitled to 6.2187 days of "grace period" to offset any delay the Court might find in loading or discharge operations; and (3) whether its 6.2187 days of "grace period" exceeds any period of delay, negating any liquidated damages for Plaintiff. *Id.* at 1-2. Plaintiff opposes the motion, primarily arguing that disputes over material fact preclude judgment in favor of Defendant. Dkt. #28. For the reasons set forth below, the Court GRANTS IN PART and DEFERS IN PART the motion.[1]

---

[1] Further, the Court also DENIES Defendant's Motion for Relief from Discovery Motion Deadline and Defendant's Motion for Security Costs.

ORDER - 1

## II. BACKGROUND

This is a contract dispute. The dispute concerns liquidated damages pursuant to demurrage provisions of shipping agreements.[2] Defendant is an international freight forwarder based in South Korea. Dkts. #23 at ¶ 3 and #23-1 at 22. It chartered a ship operated by Plaintiff Teras Chartering, LLC ("Teras") to carry equipment from Asia to Venezuela for a refinery construction project. Dkts. #9 at ¶ 4, #11 at ¶ 4 and #23-1 at 19-20. The ship was to pick up Defendant's cargo in Sattahip, Thailand, then pick up additional cargo in Masan, South Korea, and then arrive in Guanta, Venezuela, 35 days later, "AGW WP" (meaning "all going well, weather permitting"). *See* Dkt. #30 at 48.

Plaintiff now alleges that delays occurred and ship time was lost. Thus, Plaintiff brings this action to recover demurrage for Defendant's alleged delays, and costs including attorney's fees. Dkt. #9 at ¶ ¶ 7-12. Defendant has filed a counterclaim, asserting that Plaintiff cannot "substantially prevail" on its claims and Defendant is therefore entitled to legal fees and costs pursuant to the Booking Notes. Dkt. #11 at 6. A bench trial is currently scheduled for June 19, 2017. Dkt. #15.

### A. Timeline of Events

The parties have made it difficult to trace the basic facts of this case; however, the Court has discerned the following timeline of events leading to the instant dispute. On September 14, 2015, Defendant and Plaintiff negotiated an agreement, using Plaintiff's form "Booking Note," to carry Defendant's cargo aboard the United States flag vessel, MV NORFOLK, from Sattahip,

---

[2] Demurrage is a reparation paid to the ship owner to compensate for vessel time lost by delays in loading or discharging the cargo. 2 Thomas J. Schoenbaum & Jessica L. McClellan, *Admiralty & Mar. Law* § 11-15 (5th ed. 2012). The question of whether there has been a delay depends on calculating the period allowed for loading and unloading (called "laytime").

ORDER - 2

Thailand to Guanta, Venezuela. *See* Dkt. #23-1 at 66. The Booking Note provided a "laycan" period of October 5-15, 2015. *See Id.*, Box 6. "Laycan" refers to the window of time during which a vessel must arrive at the port to avoid cancellation by the charterer. *Kolmar Americas, Inc. v. Koch Supply & Trading, LP*, 10 CIV. 7905 JSR, 2011 WL 6382566, at *2 (S.D.N.Y. Dec. 15, 2011) and Dkt. #23-1 at 39.

At some point, it became clear that the NORFOLK would not be able to arrive in Sattahip before October 15th. Dkt. #23-1 at 12 and 14. As a result, Defendant had the option to cancel its agreement to hire the NORFOLK. Dkt. #23-1 at 12, 16 and 40. Instead, the parties amended the Booking Note on October 19th, extending the laycan period until October 25th. *See* Dkt. # 23-1 at 13 and 72. Although not entirely clear on this record, it appears that the NORFOLK arrived at Sattahip and presented its Notice of Readiness to load on October 24, 2015. However, the vessel could not actually load cargo at Sattahip until "1000" on October 28, 2015. *See* Dkts. #22 at 16 and #23-1 at 43. The NORFOLK departed Sattahip some unspecified number of days later, heading for Masan.

In the meantime, the parties signed another Booking Note on November 3rd regarding the transport of additional cargo from Masan to Guanta. Dkt. #23-1 at 84. That Booking Note specified a laycan period of November 3-13, 2015. *Id.* On November 12, 2015, one day before the end of the laycan, the NORFOLK presented her Notice of Readiness to load in Masan. Four days later, on November 16th, the NORFOLK departed Masan for Guanta. Dkt. #30 at 48.

Based on the record, it appears that the NORFOLK presented her Notice of Readiness to unload in Guanta on December 21, 2015. Dkt. #30 at 49. The next day, the NORFOLK began discharging cargo. Dkts. #11 at 3 and #30 at 50. Unloading then appears to have stopped entirely for a period of days. *See* Dkt. #23-1 at 10. The process of discharging cargo finished on

ORDER - 3

December 30, 2015.  Dkts. #9 at ¶ 7 and #11 at ¶ 7. Plaintiff now asserts claims for demurrage for alleged delay during the unloading period.

**B. Contract Language in Dispute**

The parties agree that the Booking Notes govern the instant dispute.  The relevant aspects of the original Sattahip Booking Note include:

- Time For Shipment: October 5 –15, 2015.

- "Full Liner Terms Hook/Hook" and "[m]erchant to provide cargo at load port as fast as vessel can load; and take away from under ship at discharge port as fast as ship can discharge, otherwise vessel detention to apply for account of merchant." [3]

- "Loading, Discharging and Delivery of the cargo shall be arranged by the Carrier's Agent and unless otherwise agreed . . . [t]he merchant or his assign shall tender the goods when the vessel is ready to load and as fast as the vessel can receive – but only if required by the carrier – also outside ordinary working hours notwithstanding any custom of the port."

- "Carrier shall give shipper notice of readiness of vessel to load/discharge upon arrival at each loading/discharging port when the vessel is ready to load/discharge cargo, whether the vessel is in berth or not."

- "Counting of laytime shall commence upon date/time of issuance of Notice of Readiness to load/discharge by carrier and shall continue uninterruptedly until loading/discharge has been completed. Any time in excess of the allocated laytime shall be charged as demurrage . . . ." [4]

- Defendant shall pay to Plaintiff "[d]emurrage at the rate identified in Box 11 on the face of this agreement or pro rata thereof . . . when the actions of the [Defendant] or of third parties beyond the control of [Plaintiff] cause any delay in the transport services, including loading/discharging of the goods." The demurrage rate identified in Box 11 is "USD 20,000 pdpr ("per day, prorated") plus any port, terminal, equipment, labor or other expenses."

---

[3] In a standard "charter party" (contract to charter a vessel), the owner of the cargo is responsible for discharging its own cargo when the carrier arrives at the destination.  In this case, however, Plaintiff (the carrier) was responsible for unloading the cargo from the ship and Defendant was responsible for "taking it away." Dkt. #23-1 at 66, Boxes 13(A) and 13(C).  Despite the fact that the parties never explain what "taking it away" actually entails, Defendant's failure to "take the cargo away" in Guanta in a timely manner seems to be the crux of this lawsuit.

[4] "Laytime" is the period of time allowed for loading and unloading the Vessel.

ORDER - 4

- "Detention to count in case of swell and port congestion."[5]

- "48 hours free time for all purposes to be granted."

Dkt. #23-1 at 66-67 and 69.

The relevant aspects of the Amended Sattahip Booking Note include:

- Defendant "agrees to extend the lay-can until October 25, 2015."

- "No detention and waiting time due to swell and/or congestion to count at port of loading."

- "[Plaintiff] to grant 0.5 days grace period each day of which [Plaintiff] missed the laycan for all purpose[sic]."

- "All other terms, conditions and exceptions of the BN shall remain unaltered."

Dkt. #23-1 at 72.

The relevant provisions of the Masan Booking Note include:

- Time for Shipment: November 3 – 13, 2015.

- "Grace Period – POD ("port of discharge") – as per Teras / Hyupjin Booking Note dated September 14, 2015 and Addendum dated October 19, 2015."

- "Full Liner Terms Hook/Hook" and "[m]erchant to provide cargo at loadport as fast as vessel can load; and take away from under ship at discharge port as fast as ship can discharge, otherwise vessel detention to apply for account of merchant."

- "Detention to count in case of swell and port congestion."

- Defendant shall pay to Plaintiff "[d]emurrage at the rate identified in Box 11 on the face of this agreement or pro rata thereof . . . when the actions of the [Defendant] or of third parties beyond the control of [Plaintiff] cause any delay in the transport services, including loading/discharging of the goods." The demurrage rate identified in Box 11 is "USD 20,000 pdpr plus any port, terminal, equipment, labor or other expenses."

Dkt. #23-1 at 84 and 87.

---

[5] The Booking Notes treat the terms "detention and demurrage" synonymously. *See* Dkt. #23-1 at 87, Clause 30.

ORDER - 5

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

Defendant seeks judgment as a matter of law that Plaintiff is not entitled to any demurrage. Dkt. # 22. Specifically, it requests an Order declaring: (1) that Defendant was entitled to a reasonable time under the circumstances for the discharge of cargo at Guanta; (2) that, in addition to a reasonable time, Defendant had accrued 6.2187 days of "grace period;" and (3) that the "grace period" it had accrued exceeds the maximum amount of time in which cargo operations were allegedly delayed, offsetting any delays in loading or discharge of cargo that would otherwise give rise to liability for demurrage. *Id.* at 1-2. As discussed below, the Court agrees that Defendant is entitled to a "reasonable period of time" to discharge the cargo. However, because what constitutes a "reasonable" period of time is a question of fact, the Court denies the remainder of Defendant's motion on that issue. Further, because determining whether Defendant accrued any period of grace days raises a choice-of-law question,[6] the Court defers the remainder of Defendant's motion and asks for supplemental briefing under Rule 56(e). *See* Dkt. #22 at 12. In addition, the record also raises questions of material fact pertaining to the calculation of how many grace days Defendant may have accrued.

*1. Legal Standard*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[6] Due to poor drafting of the Booking Notes, the Court is left to resolve the question of which law to apply in this matter. Both Booking Notes contain the same choice-of-law clause, which provides that "[t]he general maritime law of state of Washington shall be applicable to this agreement." Dkt. #23-1 at 70, Clause 39, and 88, Clause 39. There is no such thing as "general maritime law of Washington." As Defendant points out, this clause could refer to "the general maritime law as adopted in the State of Washington" or "the general maritime law" or "general maritime, with Washington state law as a gap-filler." Dkt. #22 at 7. Neither party presents argument as to which law the Court should apply in this matter.

ORDER - 6

R. Civ. P. 56(a), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

*2. Defendant's Motion to Strike*

As an initial matter, the Court addresses Defendant's motion to strike the Declaration of expert witness Roger Clark filed by Plaintiff in opposition to Defendant's Motion for Summary Judgment. Dkt. #40 at 3. Defendant asks the Court to strike the Clark Declaration on the bases that it contains hearsay, lacks foundation, and asserts inadmissible legal conclusions. *Id.* The Court grants this motion in part.

Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Defendant is correct that several of Mr. Clark's statements in paragraphs 8–13 of his

ORDER - 7

Declaration are hearsay or lack foundation. Mr. Clark's Declaration states that "[e]xcept as otherwise stated, all the matters set forth herein are of my own personal knowledge and, if called upon to testify, I could and would competently testify thereto." Dkt. #29 at ¶ 2. But, as Defendant points out, Mr. Clark has since testified that he was not involved in "this transaction, this booking the Korean and the Thailand cargos to Guanta, I was not involved – I was not involved, directly involved in that." Dkts. #40 at 3 and #41 at 11. Because Mr. Clark admits he was not involved in the booking, and there is no suggestion he was physically present at any time of the transactions, he does not have the requisite personal knowledge to attest to the facts he alleges in his Declaration in paragraphs 8 and 12. *See Osborne v. Boeing Co.*, No. C15-223RSL, 2016 WL 1046094, at *5 (W.D. Wash. Mar. 16, 2016) (equating personal knowledge with Declarant's "own personal experience").

Nor can Mr. Clark rely on his own reports to support the facts he alleges in paragraphs 8 and 12, because the facts presented in these reports constitute inadmissible hearsay. *See Id.* at ¶¶ 15 and 16. "At summary judgment, an expert declaration must meet two tests: (1) the opinion expressed must be admissible under Federal Rules of Evidence 702 and 703, and (2) the declaration must contain 'facts that would be admissible in evidence' and show that the affiant or declarant is competent to testify on the matters stated." *Lopez v. Contra Costa Reg'l Med. Ctr.,* 2014 U.S. Dist. LEXIS 27663, *24, 2014 WL 847369 (N.D. Cal. Feb. 28, 2014), Fed. R. Civ. P. 56(c)(4). Under Federal Rule of Evidence 703, an expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 592 (1993). However, "to the extent that [an expert's] report simply recites *facts* that constitute inadmissible hearsay, those sections of the report are barred." *McDevitt v. Guenther,* 522 F. Supp. 2d 1272, 1294 (D. Haw. 2007) (emphasis

added). Here, Mr. Clark's reports that he relied upon certain documents provided by Plaintiff. However, those documents are neither attached as exhibits to his Declaration, nor to the reports he includes with his Declaration. Thus, Mr. Clark's assertions of fact in his Declaration are without foundation and/or constitute hearsay. *See Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011) ("The reports are also inadmissible because they fail to attach copies of the documents to which they refer."). Accordingly, the Court finds that his statements of "fact" in paragraphs 8 and 12 are inadmissible.

Defendant also argues that Mr. Clark's opinions about the agreements reached by the parties, found both in his Declaration and in his reports, constitute improper legal conclusions and are therefore inadmissible. Defendant does not argue specifically which paragraphs of Mr. Clark's Declaration constitute impermissible legal conclusions, but the Court need not decide this issue because the Court does not rely on these opinions to decide the motion before it.[7]

*3. "Reasonable" Amount of Time to Discharge the Cargo in Guanta*

The Court now turns to the merits of Defendant's motion. Defendant first argues that it was entitled to discharge the cargo in Guanta in a reasonable amount of time under the circumstances, and that the time between December 21st and December 30th was reasonable, and therefore they owe no demurrage to Plaintiff. Dkt. #22 at 8-12. The Court agrees in part.

---

[7] Defendant further argues that it was not until reviewing Mr. Clark's reports, attached to his Declaration as Exhibits 1 and 2, that it realized Plaintiff believed it was owed demurrage for loading delays in Masan. Thus, Defendant asks the Court to strike the portions of Mr. Clark's reports addressing a Masan demurrage claim as irrelevant and as an untimely attempt by Plaintiff to amend its Complaint. Dkt. #40 at 5. Neither Plaintiff's Complaint nor its First Amended Complaint specify whether Plaintiff believes it is owed demurrage for delays taking place in Masan (during loading) or whether it is only seeking damages for the alleged delays in unloading in Guanta. *See* Dkts. #1 at 2 and #9 at ¶ ¶ 8 and 9. Thus, the Court declines to consider Mr. Clark's opinions about demurrage for loading in Masan unless and until such time as Plaintiff clarifies its claim.

ORDER - 9

As noted above, laytime is the period of time allowed for loading and unloading a vessel. 2 Thomas J. Schoenbaum & Jessica L. McClellan, *Admiralty & Mar. Law* § 11-15 (5th ed. 2012). Under the Booking Notes in this case, laytime starts running upon the issuance of a Notice of Readiness and continues uninterruptedly until discharge is complete. *See* Dkt. 23-1 at 69, Clause 29, and 87, Clause 29. However, the Booking Notes do not specify a *quantity* of laytime, *i.e.*, a set number of days in which the vessel should be unloaded.

Defendant argues that universally-accepted authorities dictate that because the Booking Notes do not provide a fixed amount of laytime, Defendant is entitled to take away cargo from under the ship's crane hook in a time that is reasonable under the circumstances.[8] *See* Dkt. #22 at 8-10. Defendant is correct that where charter parties (contracts to charter a vessel) are silent on the question of laytime, universally-accepted authorities provide that the charterer has a "reasonable" time under the circumstances for loading and discharging the cargo. *See, e.g., Caytrans Project Servs., Ltd. v. Mediterranean Commerce & Shipping, Inc.*, CIV. A. 96-0742, 1997 WL 642563, at *3 (E.D. La. Oct. 17, 1997) (quoting 2B Benedict On Admiralty § 31, at, 2–33 (7th ed.)) and *Wong Wing Fai Co., S.A. v. United States*, 840 F.2d 1462, 1466 (9th Cir. 1988). However, Plaintiff argues that the Booking Notes "in this case do not constitute a charter – time, voyage or otherwise" and consequently, Defendant's authority is not on point. Dkt. #28 at 11. Yet Plaintiff fails to provide any alternate legal authority, *id.* at 10-11, and it does not explain why the Booking Notes do not "constitute a charter."

It is true that Defendant's authority focuses on traditional charter parties, whereas here, Plaintiff was responsible for unloading the cargo over the ship's side and Defendant was only

---

[8] As noted above, in this case Plaintiff was responsible for loading and unloading the vessel, but Defendant was "required to . . . *take away cargo* from under the ship's crane hook at the port of discharge as fast as the vessel can discharge." Dkt. #29 at 38.

ORDER - 10

responsible for taking it away from under the ship's hook. *See* Dkt. #23-1 at 66, Boxes 13(A) and 13(C). However, the reality is that the Booking Notes in this case and the charter parties in the cases cited by Defendant are substantially similar. Furthermore, the plain text of the Booking Notes supports the underlying principles of the case law Defendant cites. Specifically, the provisions at issue require Defendant to take away cargo as fast as the ship can discharge, "otherwise detention to apply." *Id.* The word "otherwise" suggests that if Defendant took cargo away within a reasonable period of time, it would not be liable for detention.[9]

However, while the Court agrees that Defendant was entitled to a reasonable period of time to discharge the cargo in Guanta, neither party addresses whether any of the loading or unloading periods were actually reasonable. Put simply, Defendant implicitly asserts that, but never actually explains why, the unloading period in Guanta was reasonable. Moreover, what constitutes a reasonable period of time is a question of fact that cannot be resolved on summary judgment. *See Schooner Mahukona Co. v. 180,000 Feet of Lumber*, 142 F. 578, 582 (N.D. Cal. 1906) ("[W]hat shall be deemed a reasonable time or reasonable diligence must always be a question of fact, to be determined by the particular circumstances of each case[.]"). Therefore, the Court cannot further resolve this issue at this time.

*4. Defendant's "Grace Period"*

Defendant has also moved for summary judgment on the issue of how many days of grace period it is entitled to cover delays, if any, in discharging cargo in Guanta. In particular,

---

[9] As Defendant also points out, the use of the term "Full Liner Terms Hook/Hook" in the Booking Notes is inconsistent with requiring a specified period of laytime. For example, if "laytime" is the period for unloading the ship, and "Full Liner Terms" make that the responsibility of Plaintiff (with Defendant only responsible for "taking the cargo away from the ship's hook"), then a ceiling on the period for laytime could make Defendant liable to Plaintiff for delays caused by *Plaintiff* when bringing the cargo over the ship's side. That is nonsensical.

ORDER - 11

Defendant seeks a determination that it accrued 6.2187 days of "grace period." Dkt. #22 at 1. Plaintiff argues that the amount of grace time Defendant accrued is a disputed fact. *See* Dkt. #29. Analyzing this question requires the Court to first determine whether the Booking Notes provide when and how grace period is accrued, and then whether that leads the Court to an actual calculation of "grace period." The Court finds that based on the current record, it requires supplemental briefing from the parties on which law to apply to interpreting the Booking Notes' grace period provisions.

The Addendum to the Sattahip Booking Note, which delayed the original October 15th laycan date to October 25th, stated:

> [Plaintiff] to grant .5 days grace period each day of which the [Plaintiff] missed the lay-can for all purpose [sic].

Dkt. #23-1 at 72. Pointing to this Addendum, Defendant argues that "grace period" began accruing, at a rate of .5 grace days per actual day, beginning October 15, 2015, the original laycan date. Dkt. #22 at 12. Plaintiff argues that Defendant is not entitled to any "grace days" because Plaintiff brought the vessel into Sattahip before the expiration of the amended laycan date, October 25th, and therefore the grace period provision never took effect. Dkt. #28 at 6.

The answer lies in how to interpret the term "missed the lay-can." However, general maritime law and Washington law differ in respects that prove important for deciding whether the Court can interpret the term as a matter of law. As both federal courts applying maritime law and the Washington Supreme Court have noted, "interpretation" involves ascertaining the *meaning* of contractual words, while "construction" involves deciding their legal effect." *See, e.g. F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1356–57 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir. 2009) (citing 11 Richard A. Lord, Williston on Contracts § 30:1 (4th

ed. 2006)). *See also Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wash. 2d 274, 282 (2013) (en banc). "Construction" is understood to be a question of law for the Court.

As stated above, the Booking Notes have an ambiguous choice-of-law clause that points to non-existent "general maritime law of Washington state." If general maritime law applies, "interpretation" may become a question of fact if the Court determines the language of the contract is ambiguous. *See F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1356–57 (S.D. Fla. 2007), *aff'd,* 308 F. App'x 389 (11th Cir. 2009) (citing 11 Richard A. Lord, Williston on Contracts § 30:1 (4th ed. 2006)). Under general maritime law, the Court is first required to determine whether the contract is ambiguous, or "reasonably susceptible to more than one interpretation." *See Atl. Dry Dock Corp. v. United States*, 773 F. Supp. 335, 338 (M.D. Fla. 1991). If the Court answers that question affirmatively, then extrinsic evidence is admissible to assist with interpretation of the term at issue. However, the introduction of extrinsic evidence injects a material fact issue concerning the parties' intent that precludes summary judgment. *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294 (5th Cir. 2007).

If Washington law applies, however, the Court may utilize extrinsic evidence to interpret the term whether or not the Court first finds Booking Note language to be ambiguous. *See U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569 (1996). However, summary judgment would only be appropriate: (1) if the Court interprets "missed the laycan" without extrinsic evidence; or (2) if the Court, based on the extrinsic evidence, decides there is a single reasonable interpretation of the Booking Note. *See Oliver v. Alcoa, Inc.*, No. C16-0741JLR, 2017 WL 1498140, at *8 (W.D. Wash. Apr. 25, 2017) (internal citations omitted). Thus, the Court requires a resolution of the choice-of-law provision, which neither party has adequately addressed, before it can appropriately interpret the term.

ORDER - 13

Accordingly, the Court now directs the parties to address the choice-of-law question in subsequent briefing pursuant to Federal Rule of Civil Procedure 56(e). The parties' discussion should also analyze whether the Court's jurisdiction, under either admiralty or diversity, affects the law applied to the issues in this case.[10] Further, the parties should include a discussion of how a court should decide a contract is "ambiguous," and what evidence it may rely on to do so. Therefore, the Court defers summary judgment on the issues of how to calculate Defendant's grace period and how much grace period Defendant can actually apply to offset the alleged delays in discharging the cargo in Guanta.[11]

**B. Defendant's Motion for Relief from Discovery Motion Deadline**

In addition to its Motion for Summary Judgment, Defendant also asks the Court for leave to file a discovery motion after the expiration of the discovery motion deadline. Dkt. # 24. As an initial matter, Defendant never states, if granted a reprieve from the discovery motion deadline, what type of relief it will seek. Thus, the Court has no way to consider the effect of allowing a

---

[10] Plaintiff filed this case under 28 U.S.C. §1333(1) and 28 U.S.C. §1332, but does not assert how this affects the Court's application of law to the substantive issues in this case. Dkt. #9 at 1.

[11] The Court further notes that once it ultimately interprets the term "missed the laycan," the calculation of "grace period" may require evidence that is not currently in the record. For example, Defendant argues it is entitled to "grace period" for the period between 2400 on October 15, 2015 to 1000 on October 28, 2015. Dkt. #22 at 12. However, the record is unclear as to when the vessel presented its Notice of Readiness in Sattahip. Defendant has not asserted in its motion a date that the Vessel presented the Notice of Readiness to load in Sattahip. Plaintiff's expert states that the NORFOLK presented its Notice of Readiness on October 24, 2015, *see* Dkts. #28 at 6 and #29 at 36, but the Court has stricken that "fact" as hearsay and lacking foundation. Defendant's Answer to Plaintiff's Amended Complaint states that the Notice of Readiness was not presented until October 28th. *See* Dkt. #11 at 3. The Notice of Readiness itself does not appear in the record.

ORDER - 14

late-filed discovery motion on the current trial date. Regardless, the Court finds Defendant has not demonstrated that there is good cause for allowing it to file an untimely discovery motion.[12]

Defendant requests leave to file a motion seeking remedies: (1) for Plaintiff's failure to produce a FRCP 30(b)(6) designee knowledgeable on the issues identified in Defendant's deposition notice; and (2) for Plaintiff's failure to conduct a diligent search for all documents responsive to Defendant's requests for production, including specifically those in the actual possession of Plaintiff's agent, Euro-America Shipping and Trade and its representative, Obaid Ahmed. Dkt. #24 at 1. The Court addresses each of the requests in turn.

First, with regard to Plaintiff's alleged inability to provide a knowledgeable Rule 30(b)(6) designee, Defendant appears to have created the very problem of which it now complains. Indeed, on February 13, 2017, this Court granted a stipulated motion to extend the discovery deadline, only with respect to 30(b)(6) depositions, allowing such depositions to be completed by March 10, 2017. Dkt. #21. All other discovery was to be completed by the original discovery deadline of February 21st. Dkt. # 15. Further, all motions related to discovery were to be filed no later than January 20, 2017.[13] *Id.* That deadline was never extended by the parties.[14] *See* Dkts. #17, #19 and #21. The parties' most recent stipulated motion to extend the discovery deadline noted specifically that counsel were "available for the 30(b)(6) deposition of Hyupjin on March 8, 2017,

---

[12] Although Defendant styles its motion as one seeking to amend the Scheduling Order to extend the discovery motion deadline, the Court interprets the motion as one simply seeking leave to file an untimely discovery motion, giving rise to a good cause analysis rather than an analysis under Federal Rule of Civil Procedure 16(b).

[13] Due to a scrivener's error, this deadline is reflected in the Court's docket entry itself, but not in the Court's Order. *See* Dkt. #15.

[14] Even if the parties had failed to realize the deadline for discovery motions set forth in the Court's docket entry, the Court's Local Rules still provide that such motions are to be noted no later than the Friday before the discovery deadline, which in this case had been set for February 21, 2017.

ORDER - 15

and the 30(b)(6) deposition of Teras on the following day, March 9, 2017" but that "[t]he parties do not seek an extension of any of the other case deadlines." Dkt. #21 at 2. Thus, Defendant stipulated to conducting Rule 30(b)(6) depositions after the deadline for making discovery motions.

In addition, in the motion it makes now, Defendant states that it complained to Plaintiff's counsel regarding the Rule 30(b)(6) deposition, specifically "about [Plaintiff's] failure to provide designees able to testify about each of the topics in the notice, and specifically held the deposition open at its conclusion." Dkt. #24 at 6 (citing Dkt. #26-1 at 197). Strangely, in reply, Defendant also argues it should be allowed to file an untimely discovery motion on the basis that "Teras' Counsel's Conduct during Deposition Was Unknown to Hyupjin until Recently." Dkt. #39 at 6-7. This statement makes no sense considering that Defendant's counsel was present during its own deposition of Plaintiff's Rule 30(b)(6) designee, and therefore knew of the conduct as of that date. Yet, Defendant waited until March 17th to discuss the subject with Plaintiff's counsel, and did not raise it with the Court until April 4th. *See* Dkt. #24 at 6. As a result, the Court is not persuaded that Defendant has shown good cause to file an untimely motion for remedies pertaining to Plaintiff's 30(b)(6) witness.

Defendant also seeks to file an untimely motion to remedy Plaintiff's alleged failure to conduct a diligent search for all documents responsive to Defendant's requests for production. Dkt. #24 at 1. Apparently, defense counsel first learned of an email concerning one of the ship brokerage intermediaries involved in the negotiations between Defendant and Plaintiff when Defendant's representatives came to Seattle for their Rule 30(b)(6) depositions during the week of March 6th. Dkt. #24 at 4. Believing that Defendant should have already received a copy of the email during discovery, Defendant searched Plaintiff's production, and concluded that although

other emails from the same time period, involving the same topic and exchanged among the same recipients had been produced, this email had not been. *Id*. at 4. Defendant supplemented its own production to Plaintiff, and disclosed the email on March 7th. *Id.* Counsel for the parties met on March 9th to confer about why the email had not been included in Plaintiff's production. *Id.* The parties disagreed about whether Plaintiff was responsible for making a reasonable inquiry for all responsive documents within its control, and not simply in its actual possession, and Plaintiff's counsel requested legal authority to support the notion that it had an obligation to request documents from its ship broker/agent. *Id.* at 5. Despite the fact that the discovery motion deadline had already passed, and the fact that Defendant understood Plaintiff to be taking the position it did not have to request documents from its ship broker, Defendant did not make a motion before this Court at that time, and in fact did not send the supplemental authority Plaintiff had requested until March 17th. *Id.* Moreover, Defendant does not explain to the Court what it expects in the form of any remedy at this juncture, how allowing it to move for such a remedy would affect the potential outcome of any issue in this matter, or how is has been prejudiced in this matter.

While the Court appreciates Defendant's efforts to resolve these disputes without Court intervention, the Court will not reward Defendant's failure to anticipate the need for extending other discovery-related deadlines when it moved to extend the deadline for 30(b)(6) depositions. Defendant asks not only for the opportunity to make a discovery motion after the deadline, but also after discovery itself closed on February 21, 2017. Therefore, for all of the above reasons, this Court denies Defendant's motion.

**C. Defendant's Motion for Security Costs**

Finally, Defendant also moves for an Order requiring Plaintiff to post a bond (or cash) in the amount of $150,000.00 as security for the fees and costs that could be awarded to Defendant.

ORDER - 17

Dkt. #36. Defendant further requests that if security is ordered, proceedings in this action be stayed until the required security has been provided. Dkt. # 36 at 4. Defendant argues that it is concerned about Plaintiff's ability to satisfy an award of attorney fees and costs should Defendant substantially prevail in this action because Plaintiff's affiliates are engaged in litigation in multiple jurisdictions implicating significant amounts of money. *Id.* at 2 and 4. Defendant's counsel estimates that "$150,000 represents a conservative estimate of Hyupjin's likely attorney fees and costs through trial." Dkt. #38 at ¶ 4.

The Court denies Defendant's motion. The motion is entirely based on the assumption that Defendant will substantially prevail on its counterclaim. In light of the above analysis, such an assumption is unsupported.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1. Defendant's Motion for Summary Judgment (Dkt. # 22) is GRANTED IN PART and DEFERRED IN PART. The Clerk SHALL RE-NOTE Defendant's Motion for Summary Judgment (Dkt. #22) for consideration of the outstanding issues on **June 30, 2017**.

2. Pursuant to Federal Rule of Civil Procedure 56(e), the parties shall provide additional briefing regarding:

    a. Choice-of-law for interpreting:
    
        i. The ambiguous choice-of-law clause;
        ii. The Sattahip and Masan Booking Notes; and
        iii. The Amended Sattahip Booking Note.
    
    b. Under the applicable substantive law, how the Court should decide a contract is "ambiguous," and what evidence it may rely on to do so.

ORDER - 18

c. The Court's jurisdiction under both admiralty and diversity jurisdiction, and its impact on controlling law.

   d. The Parties' position on when the NORFOLK presented its Notice of Readiness in Sattahip.

3. Defendant shall file its supplemental briefing **no later than June 16, 2017**, and Plaintiff shall file its response **no later than June 30, 2017**. No reply shall be filed. The parties' briefs are limited to **no more than 10 pages**, but may be supported by Declarations and additional evidence if necessary. After reviewing the supplemental briefs, the Court will determine whether oral argument is necessary, and will issue a final Order resolving the remaining issues presented in Defendant's Summary Judgment Motion.

4. The Clerk SHALL STRIKE the current trial date and remaining pre-trial deadlines, and will reset those dates, if necessary, once the remaining issues on summary judgment have been resolved.

5. The Clerk SHALL also strike the parties' pending motions in limine (Dkts. #52 and #54), and will allow the parties to re-file those motions, should it become necessary, once the remaining issues on summary judgment have been resolved.

6. Defendant's Motion for Relief from Discovery Motion Deadline (Dkt. #24) is DENIED.

7. Defendant's Motion for Security Costs (Dkt. #36) is DENIED.

DATED this 31st day of May, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 19